**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| HUGH MAURICE ALLEN WADE, | : |
| | : |
| | : Civil Action No. 15-8925 (RMB) |
| Petitioner, | : |
| | : |
| v. | : **OPINION** |
| | : |
| WARDEN, FCI FAIRTON, and | : |
| U.S. PAROLE COMMISSION | : |
| | : |
| Respondents. | : |
| | : |

**BUMB**, District Judge

This matter comes before the Court upon Petitioner's submission of an Amended Petition under 28 U.S.C. § 2241 (ECF Nos. 1, 8); Respondents' Answer to the Amended Petition (ECF Nos. 7, 12); and Petitioner's Response (ECF No. 9.) Also before the Court is Petitioner's letter request for a hearing and for appointment of pro bono counsel. (ECF No. 14.) For the reasons discussed below, Petitioner's request for a hearing and for appointment of pro bono counsel will be denied, and the habeas petition will be denied.

I.    BACKGROUND OF PAROLE REVOCATION

Petitioner, Hugh Maurice Allen Wade, is a federal inmate confined at the Federal Correctional Institution in Fairton, New

Jersey ("FCI-Fairton") (ECF No. 1, ¶2.) On January 30, 1979, Petitioner was sentenced in the United States District Court for the District of Maryland to a prison term of fifteen years for distribution of heroin, a consecutive ten years for bank robbery, and a 5-year special parole term to follow. (Gervasoni Certificate, ECF No. 7-4, Ex. 1 [Sentence Monitoring Computation Data, pp. 7-8]).

The Commission paroled Petitioner from this aggregate 25-year sentence on September 29, 1986, to remain under "regular" parole supervision until July 24, 2002.[1] (Id., Ex. 2 [Certificate of Parole]). The Commission revoked Petitioner's parole on April 11, 1991, ordering that he receive no credit for time spent on parole. (Id., Ex. 3 [Notice of Action]). The period forfeited was from February 23, 1979 through September 29, 1986. (Id., Ex. 1 [Sentence Monitoring Computation Data, p. 7, "date committed" and p. 9, "actual satisfaction date"]).

Petitioner was reparoled July 3, 1992, to remain under regular parole supervision until November 23, 2006. (Id., Ex. 4 [Certificate of Parole]).

The Commission revoked Petitioner's parole again on April 25, 1995, ordering that he receive no credit for time spent on parole, and that he serve 32 months prior to reparole. (Id., Ex.

---

1 Special parole follows termination of the "regular" parole supervision. See 28 C.F.R. §2.57(a).

5 [Notice of Action]). He forfeited credit for this revocation from July 2, 1992 through December 28, 1994 (warrant executed). (Gervasoni Certificate, Ex. 1 [Sentence Monitoring Computation Data, p. 3, "date warrant executed" and p. 6, "actual satisfaction date"]). Based on an institutional rule infraction, the reparole date was extended by 60 days. (Id., Ex. 6 [Notice of Action]).

Petitioner was again paroled on October 28, 1999, with parole supervision extending until May 19, 2009. (Id., Ex. 7 [Certificate of Parole and Certificate of Special Parole]). The BOP also issued a certificate of special parole, showing that Petitioner's special parole term, assuming successful parole, would commence May 20, 2009, and run until May 19, 2014. (Id.)

On May 13, 2003, the Commission issued a warrant charging Petitioner with violating the conditions of parole by committing violations of law including theft, possession of controlled dangerous substance, fraud by identity theft and forgery,. (Id., Ex. 8 [Warrant Application and Warrant]). The Commission instructed the United States Marshals Service that its warrant should be placed as a detainer. (Id., Ex. 9 [Memorandum]). The warrant was executed on October 1, 2014. (Id., Ex. 11 [Warrant Return]).

On June 1, 2005, the Baltimore City Circuit Court sentenced Petitioner to an aggregate 21-year sentence for theft, forgery

3

and related counts. (Id., Ex. 9, p. 2.) On October 14, 2014, the Commission supplemented its warrant with this information. (Gervasoni Certificate, Ex. 10 [Supplement to Warrant Application]). Petitioner's parole revocation hearing was held on March 4, 2015. (Id., Ex. 12, p. 1 [Revocation Hearing Summary]) The Commission ordered his parole revoked, with no credit for time spent on parole, and further ordered that he serve to the expiration of his sentence. The time forfeited was from October 28, 1999 (parole) release through October 1, 2014 (execution of warrant). (Id., Ex. 7, 11 [Certificate of Parole and Warrant Return]).

The decision was a departure from Petitioner's parole guideline range, which was 60-72 months. (Id., Ex. 13, p. 2 [Federal Institutional Revocation]). Instead, Petitioner would serve about 214 months to expiration of his sentence. (Id., Ex. 12, p. 4 [Revocation Hearing Summary]). The Commission gave the following reasons for departure:

> After review of all relevant factors and information, a decision above the guidelines is warranted because you are a more serious risk than indicated by your salient factor score due to your history of repetitive sophisticated criminal behavior involving fraud, identity theft, and the manufacture and cashing of counterfeit business payroll checks. Specifically, you have two prior convictions, committed while on parole for Bank Robbery, that involves sophisticated fraud similar to your current violation behavior.

4

. . .

This now marks your third consecutive parole revocation due to new convictions involving check fraud and the manufacture of counterfeit checks for cashing. The Commission finds, with each consecutive conviction, the fraud/theft scheme and counterfeit check operations have become more sophisticated through the use of new technology (i.e., computers, programs, scanners, and printers), and larger in both scale and scope, in that the new conduct also involves Identity Theft and credit cards. Additionally, the Commission finds that prior lengthy prison terms have not deterred you from committing similar crimes. The Commission further finds your advanced age of 67 will not likely deter you from committing similar crimes if paroled because were already older than 41-years-old when you committed the conduct resulting in your first parole revocation. Thus, the Commission concludes, neither length of sentence nor advanced age are good indicators of a reduced risk to recidivate. After consideration of all relevant factors, the Commission finds your pattern of repetitive sophisticated criminal behavior creates a reasonable probability you will commit similar crimes if released, and your continued incarceration is necessary to protect the public welfare.

(Gervasoni Certificate, Ex. 13, pp. 3-4 [Revocation Hearing Summary]).

Petitioner filed an administrative appeal in which he argued that a decision outside the guidelines was not supported. (Id., Ex. 14 [Appeal]). The National Appeals Board affirmed the Commission's decision. (Id., Ex. 15 [Notice of Action on Appeal]).

II.   DISCUSSION

A.   Jurisdiction

A habeas petition under 28 U.S.C. § 2241 is the proper vehicle for a prisoner to challenge the execution of his sentence, including parole decisions by the United States Parole Commission. U.S. v. Kennedy, 851 F.2d 689, 690 (3d Cir. 1988) (citing United States v. Ferri, 686 F.2d 147, 158 (3d Cir. 1982), cert. denied, 459 U.S. 1211 (1983)). Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court's standard of review over a Parole Commission's decision is whether there is a rational basis in the record for the Commission's conclusions. Furnari v. Warden, 218 F.3d 250, 254 (3d Cir. 2000).

B.   Evidentiary Hearing

If a habeas petition presents only issues of law an evidentiary hearing is not required. 28 U.S.C. § 2243; Yohn v. Love, 76 F.3d 508, 515 (3d Cir. 1996)(an evidentiary hearing in a habeas proceeding under 28 U.S.C. § 2241 is not mandatory if the court can decide the issues on the evidence contained in the record.) All of the issues presented in the petition can be determined without additional fact-finding. Therefore, Petitioner's request for a hearing is denied.

C.   Appointment of Pro Bono Counsel

6

There is no constitutional or statutory right to appointment of counsel in a civil proceeding. Ray v. Robinson, 640 F.2d 474, 478 (3d Cir. 1981). 28 U.S.C. § 1915(e)(1) provides: "[t]he court may request an attorney to represent any person unable to afford counsel." In exercising its discretion to request that an attorney represent a civil litigant on a pro bono basis, the court must consider as a threshold matter the claims have "some merit in law and fact." Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993). (quoting Maclin, 650 F.2d at 887 (quoting Spears v. United States, 266 F.Supp. 22, 25-26 (S.D. W.Va. 1967)). The habeas petition passes this threshold requirement. Therefore, the court must weigh additional factors in determining whether to appoint pro bono counsel. Id.

The first factor is the litigant's ability to present his or her case. Id. at 156. This factor is significant here because Petitioner has ably presented an extensive habeas petition and on his own behalf, successfully sought to amend the petition to add additional claims, and replied to Respondents' Answer. Petitioner demonstrates an ability to address a complex statutory and regulatory scheme regarding parole decisions.

A second factor is the degree to which factual investigation will be required. Id. No additional factual development is necessary for the Court to decide the issues of law presented in the habeas petition. Furthermore, the case is

not likely to turn on credibility determinations and will not require expert witnesses. Therefore, the factors weigh against appointing counsel in this § 2241 proceeding, and the Court will deny Petitioner's request for appointment of pro bono counsel.

    D.   <u>Exhaustion of Administrative Remedies</u>

Respondents assert Petitioner has not exhausted any of the three levels of the administrative remedy process concerning his claim that the BOP erroneously denied Industrial/Work Credit (Ground Twelve), and his claim that the BOP discriminates against Old Law inmates (unlike "New Law" inmates – whose convicted offenses were committed on or after November 1, 1987) by holding them to higher standards to receive "Reductions in Sentences" (RIS)(Ground Thirteen). (Declaration of Patricia Kitka, ECF No. 7-1, ¶¶ 6-10).

The Third Circuit Court of Appeals applies the exhaustion doctrine to petitions for a writ of habeas corpus under 28 U.S.C. § 2241. <u>Gambino v. Morris</u>, 134 F.3d 156, 171 (3d Cir. 1998). Federal prisoners are ordinarily required to exhaust their administrative remedies before filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241. <u>Moscato v. Federal Bureau of Prisons</u>, 98 F.3d 757, 761-62 (3d Cir. 1996). The goals of the exhaustion doctrine are (1) facilitating judicial review by allowing the agency to develop a factual record and apply its expertise, (2) conservation of judicial time if the agency

grants the relief sought, and (3) giving an agency the opportunity to correct its own errors. Id. Failure to exhaust administrative remedies creates a procedural default barring a § 2241 habeas petition absent a showing of cause and actual prejudice to excuse the default. Id. at 762.

Petitioner has not addressed Respondents' contention that he failed to exhaust the BOP administrative remedy process for the claims against the BOP raised in his petition. See 28 C.F.R. §§ 542.10-18 (describing BOP administrative remedy procedure). Although there is a futility exception to the exhaustion requirement, Petitioner has not attempted to demonstrate futility. See Gambino, 134 F.3d at 171 (noting exhaustion is not required "when the petitioner demonstrates that it is futile.") Therefore, the Court will dismiss these claims without prejudice because Petitioner failed to exhaust his administrative remedies.[2]

E.   Ground One

In Ground One, Petitioner contends the Commission used a 1991 conviction that had been vacated to determine he was a poor parole risk. Respondents assert the Commission first revoked Petitioner's parole based on a July 24, 1990 conviction for

---

[2]   The Court notes that if all additional avenues of administrative remedy are now closed to Petitioner, his unexhausted claims are procedurally defaulted, absent a showing of cause and prejudice. Moscato, 98 F.3d at 762.

conspiracy and uttering, for which he received a ten-year sentence. (Id., Ex. 3 [Notice of Action]).

Furthermore, Respondents claim Petitioner explained, during his most recent revocation hearing, that the sentence for the 1990 conviction was suspended. (Gervasoni Certificate, Ex. 16 [Revocation Summary]). In reply, Petitioner submits that he was mistaken about the suspended sentence; the conviction was actually vacated but he has been unable to obtain documents supporting this claim. (Id.) In any event, Respondents note Petitioner admitted, at the most recent revocation hearing, that he cashed a counterfeit check and "was involved with two other checks" in connection with the 1990 conviction. (Gervasoni Certificate, Ex. 16 [Revocation Summary]). Even assuming that the conviction was vacated, Respondents contend the Commission's reasons for departure from the guidelines are unaffected by vacation of the conviction because Petitioner admitted the underlying misconduct.

First, the Court notes Petitioner's Salient Factor Score for prior convictions under the Parole Guidelines is the same whether he had two rather than three prior convictions. See 28 C.F.R. § 2.20, Salient Factor Scoring Manual, Item A. Second, the Commission is authorized to make "parole decisions outside the guidelines where 'good cause' is determined to exist." Campbell v. U.S. Parole Com'n, 704 F.2d 106, 111 (3d Cir.

1983)(quoting 18 U.S.C. § 4206(c)(1976)). Even if the Court assumes Petitioner was innocent of the 1990 conviction, his two subsequent convictions for crimes committed while on parole provide good cause for the Commission's exercise of its discretion in departing upward from the guidelines. A habeas court "cannot disturb the Parole Commission's ruling unless it acted arbitrarily or capriciously or abused its discretion in reaching its result." U.S. v. Friedland, 83 F.3d 1531, 1542 (3d Cir. 1996). Therefore, the Court will deny Ground One of the Amended Petition.

    F.    Ground Two

    Petitioner contends there are mitigating circumstances that justify a different decision by the Commission, including his diagnosis of multiple myeloma in 2009, his confinement to a wheelchair for the last several years, and that he served 12 years imprisonment in the State of Maryland on the conviction for which his parole was revoked. Respondents argue the Commission considered but rejected these factors. (Gervasoni Certificate, Ex. 12, p. 1 [Revocation Hearing Summary]; id., Ex. 14 [Appeal]). The Parole Commission "has the complete authority to assign the weight to any mitigating factors in determining whether to grant parole." Furnari, 531 F.3d at 255 (citing Campbell, 704 F.2d at 113.) Therefore, this Court cannot dictate to the Commission the weight to be given to Petitioner's age and

11

medical condition. Petitioner is not entitled to habeas relief on Ground Two of the Amended Petition.

G.   <u>Ground Three</u>

Petitioner asserts he was treated unequally from others because the Parole Commission did not follow precedent in awarding parole violator credit for time he served in a state facility. He seeks credit for 12 years served in the Maryland Department of Corrections.

Respondents explain that the Commission considers convictions as a basis for the forfeiture of street time, pursuant to 18 U.S.C. § 4210(b)(2) and 28 C.F.R. § 2.52(c)(2). 18 U.S.C. § 4210(b)(2)(repealed) provides that in the case of any prisoner "who has been convicted of any offense" that is punishable by a term of incarceration, the Commission shall decide "whether all or any part of the unexpired term being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new offense."

28 C.F.R. § 2.52(c)(2) provides that "[i]t is the Commission's interpretation of 18 U.S.C. § 4210(b)(2) that, if a parolee has been convicted of a new offense committed subsequent to his release on parole which is punishable by any term of imprisonment, detention, or incarceration in any penal facility, forfeiture of time from the date of such release to the date of

execution of the warrant is an automatic statutory penalty, and such time shall not be credited to the service of the sentence."

The Commission gave Petitioner "reparole guidelines credit" for the 137 months he served in state custody. (Gervasoni Certificate, Ex. 12, p. 4 [Revocation Hearing Summary]("The subject has been in custody 143 months as of 3/25/2015, which includes guideline credit of 137 months for time in custody in service of the conviction in charge 1 prior to the warrant execution."); id., Ex. 13, p. 2 [Notice of Action]("As of 2/23/2015, you have been in confinement as a result of your violation behavior for a total of 142 months.")

Regulations require the Commission to give credit against the reparole guidelines for periods of time a parolee was incarcerated on a new state or federal sentence. 28 C.F.R. § 2.21(c) provides:

> Time served on a new state or federal sentence shall be counted as time in custody for reparole guideline purposes. *This does not affect the computation of the expiration date of the violator term as provided by §§2.47(d) and 2.52(c) and (d).*

(emphasis added).

28 C.F.R. § 2.47(e)(1) provides that a violator whose parole is revoked "shall be given credit for all time in federal, state, or local confinement on a new offense for purposes of satisfaction of the reparole guidelines at §§ 2.20

13

and 2.21." See Staege v. U.S. Parole Commission, 671 F.2d 266, 269 (8th Cir. 1982)(recognizing distinction between reparole guidelines credit and calculation of violator term.)

Respondents are correct. Reparole credit is used to determine when a prisoner will be reparoled on his revoked sentence, not when the sentence will expire. See Smith v. U.S. Parole Com'n, 563 F. App'x 99, 102 (3d Cir. 2014). Under the regulations, Petitioner is entitled only to reparole guidelines credit for time served on his state sentence. Therefore, Ground Three of the Amended Petition fails.

H.   Ground Four and Supplemental Grounds One and Two

In Ground Four, Petitioner contends the Commission violated his right to due process by not giving him advance notice that his previous violations would be used against him as aggravating circumstances to go above the guidelines. Therefore, he was not prepared to argue that one of the convictions used against him was vacated.

Similarly, in Supplemental Ground One of the Amended Petition (ECF No. 8), Petitioner asserts that the Commission denied his right to due process by not advising him that he was exposed to a confinement beyond the parole guidelines by virtue of having three new criminal conduct violations. In support of this claim, Petitioner argues the Armed Career Criminal Act requires fair notice of enhanced sentencing, and the same should

14

apply to parole revocation. Finally, in Supplemental Ground Two of the Amended Petition, Petitioner contends the Commission did not properly certify his 1990 conviction, which was used to exceed the guidelines at his revocation hearing.

Respondents argue Petitioner does not have a due process right to notice of previous violations that might be used against him in determining that he was a poor parole risk. Furthermore, Petitioner had a right under 28 C.F.R. § 2.56(a) to request copies of disclosable records in his file; and such requests are "answered as soon as possible in the order of their receipt." (Respondents' Answer to Pet. for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, ECF No. 7 at 21.) Respondents assert, however, that Petitioner does not have a right to be notified of his right to request documents.

The minimal due process requirements for a final parole revocation hearing include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to

> equate this second stage of parole
> revocation to a criminal prosecution in any
> sense. It is a narrow inquiry; the process
> should be flexible enough to consider
> evidence including letters, affidavits, and
> other material that would not be admissible
> in an adversary criminal trial.

Morrissey, 408 U.S. at 489.

Although due process requires disclosure of the evidence to be used against the parolee at his parole revocation hearing, it is unclear whether this extends to advance disclosure of information that the Commission may deem an aggravating circumstance warranting a decision beyond the guidelines. See Kell v. U.S. Parole Com'n, 26 F.3d 1016, 1022 (10th Cir. 1994)(comparing statutory and regulatory schemes for parole revocations hearings and parole determination proceedings and due process requirements.)

There is a three-part inquiry for determining whether a particular procedure is required by the Due Process Clause including:

> [f]irst, the private interest that will be
> affected by the official action; second, the
> risk of an erroneous deprivation of such
> interest through the procedures used, and
> the probable value, if any, of additional or
> substitute procedural safeguards; and
> finally, the Government's interest,
> including the function involved and the
> fiscal and administrative burdens that the
> additional or substitute procedural
> requirement would entail.

Kell, 26 F.3d at 1022 (quoting Matthews v. Eldridge, 424 U.S. 319, 335 (1976)). The Tenth Circuit concluded that, in the context of parole revocation, due process does not require advance disclosure of all information the Commission might consider as a basis for exceeding the guidelines. Id. at 1023.

The Tenth Circuit reasoned that a parolee has a substantial interest in avoiding unjustified departure from the parole guidelines, but the Government has a substantial interest in avoiding undue delay in parole revocations proceedings. Id. at 1022. Advance notice of all information the Commission might treat as an aggravating circumstance would require extensive pre-revocation hearing review of the parolee's file, and additional delay for disclosure of the information. Id. The parolee's risk that the Commission could rely on inaccurate information in exceeding the guidelines is reduced by the parolee's opportunity to respond by administrative appeal. Id.

The Tenth Circuit determined that advance disclosure would be of limited value because aggravating circumstances for parole revocation, like upward departures in sentencing under the Sentencing Guidelines, were generally drawn from "documented administrative history" otherwise available to the parolee. In other words, a parolee has access to his prior parole revocation and criminal history before his parole revocation hearing, and advance notice of such provides little more than "time to refine

17

legal arguments." Id. at 1023. Given these considerations, this Court agrees with the Tenth Circuit's conclusion that due process does not require advance disclosure of all the information the Commission might consider as a basis for exceeding the guidelines.

Furthermore, there is no due process right for the Commission to "certify" a conviction before it can consider the conviction in determining a person's parole risk. There is no basis to impose such a due process right because the Commission may in fact revoke parole on the basis of charges that the parolee has been acquitted of in court because the Commission makes findings by a preponderance of the evidence standard, which is lower than guilty beyond a reasonable doubt. See e.g., Standlee v. Rhay, 557 F.2d 1303, 1307 (9th Cir. 1977)("collateral estoppel does not bar a subsequent parole revocation hearing after a criminal acquittal. The sanctions imposed and the burdens of proof are different.")

Finally, there is no basis to impose the standards for enhancing a sentence under the Armed Career Criminal Act on the U.S. Parole Commission's guidelines determinations because parole revocation is not part of a criminal prosecution. See Morrissey v. Brewer, 408 U.S. 471, 480 (1972). Therefore, the Court will deny Ground Four and Supplemental Grounds One and Two of the Amended Petition.

I.   <u>Ground Five</u>

Petitioner believes the Commission improperly "double-counted" by using the same factors to designate a guideline range of 60-72 months as it used to exceed the guideline range. Respondents disagree because the Commission departed from the guidelines based on Petitioner's pattern of fraud offenses of escalating severity, and his guidelines only took into account that his offense involved fraud/theft of more than $500. (Gervasoni Certificate, Ex. 13, pp. 2, 3 [Notice of Action]). Therefore, in considering the aggravating factors, the Commission took into account considerations beyond those that were used in making the guidelines determination.

Double-counting is when the Commission uses "the same factor in scoring a prisoner pursuant to the guidelines and as an aggravating factor justifying a decision above the guidelines." <u>Harris v. Martin</u>, 792 F.2d 52, 55 (3d Cir. 1986). In <u>Harris</u>, the Commission did not impermissibly double-count because Harris conceded his offense involved six times more heroin than the amount used to set the offense severity for the guidelines. <u>Id.</u>

Good cause for the Parole Commission to depart from the guidelines includes "consideration of factors such as whether 'the prisoner was involved in an offense with an unusual degree of sophistication or planning or has a lengthy prior record, or

was part of a large scale conspiracy or continuing criminal enterprise.'" Furnari, 531 F.3d at 253 (quoting Romano v. Baer, 805 F.2d 268, 270 (7th Cir. 1986)(quotation marks and citation omitted)).

Here, the Commission scored the offense severity rating as Category 5 because the crime involved possession of instruments for manufacture of forged checks. (Gervasoni Certificate, Ex. 12, p. 3 [Revocation Hearing Summary]). The decision to depart upward from the guidelines was based on additional considerations, including that each of Petitioner's consecutive convictions for fraud and counterfeit check operations became more sophisticated and larger in scale and scope. Id. at 34. Despite longer prison sentences with subsequent convictions, Petitioner was not deterred from committing similar but more sophisticated crimes. Therefore, Respondents are correct; the Commission based the guidelines departure on considerations beyond those considered in the offense severity rating. The Commission did not violate Petitioner's due process rights by "double counting." The Court will deny Ground Five of the habeas petition.

J.    Grounds Six and Eight[3]

Petitioner challenges the calculation of credit for twelve-years served in state custody until he was taken into federal

---

[3] The petition does not contain a Ground Seven.

20

custody on October 1, 2014. Petitioner asserts that because 28 C.F.R. § 2.21 is in conflict with the Commission's Procedures Manual Section 2.20-03(D), the rule of lenity should apply and he should get twelve years credit against his sentence.

Respondents suggest Petitioner misunderstands the difference between credit towards satisfaction of his sentence, and credit towards his reparole guidelines. Section 2.20-03(d) of the Procedures Manual instructs employees how to calculate "time in custody" for purposes of the reparole guidelines. This provision is not in conflict with 28 C.F.R. § 2.21(c), which instructs that:

> Time served on a new state or federal sentence shall be counted as time in custody **for reparole guideline purposes**. This does not affect the computation of the expiration date of the violator term as provided by Sections 2.47(e) and 2.52(c) and (d).

(emphasis added).

In reply, Petitioner states he understands that the Government gave him reparole credit for 137 months served in state custody, but when added to the 17 years he served in federal custody, it equals 29 years, which is four years more than his actual sentence.

Petitioner's claim that §§ 2.21(c) and 2.20-03(d) are in conflict is incorrect. Credit towards reparole guidelines does not affect the computation of the expiration date of the

violator term. See Smith v. U.S. Parole Com'n, 563 F. App'x 99, 102 (3d Cir. 2014) (per curiam)(describing difference between reparole date and date when original sentence would expire). Section 2.21(a) does not apply to the computation of the original sentence. The Commission properly calculated the expiration date of the violator term pursuant to § 2.47(e).[4]

---

[4] 28 C.F.R. § 2.47(e)(1), (2) provides:

> (e)(1) A parole violator whose parole is revoked shall be given credit for all time in federal, state, or local confinement on a new offense for purposes of satisfaction of the reparole guidelines at § 2.20 and § 2.21.

> (2) However, it shall be the policy of the Commission that the revoked parolee's original sentence (which due to the new conviction, stopped running upon his last release from federal confinement on parole) again start to run only upon release from the confinement portion of the new sentence or the date of reparole granted pursuant of these rules, whichever comes first. . . .

In Petitioner's case, his 25-year sentence for distribution of heroin, bank robbery, bank larceny, assault during a bank robbery, and aiding and abetting stopped running on his parole release date of October 28, 1999, at which time Petitioner had 3,491 days remaining on his 25-year sentence. (Gervasoni Certificate, Ex. 8, p.3 [Warrant]). The sentence did not begin to run again until October 1, 2014, when Petitioner was taken into federal custody on the detainer. Therefore, the 3,491 day sentence (nine years, six months and 21 days) will start to run on October 14, 2015, and the Commission properly calculated Petitioner's sentence. (Id., Ex. 1 [Sentence Monitoring Computation Data as of 04-29-2015]).

Therefore, the Court will deny Grounds Six and Eight of the petition.

K.   <u>Ground Nine</u>

Petitioner alleges that when parole was abolished, the Parole Commission did not follow the mandate of the Administrative Procedure Act, 5 U.S.C. § 553 because the agency did not give an opportunity to participate in the rule-making process. In support of this claim, Petitioner alleged the agency no longer has a Regional Commissioner to approve or deny the Examiner's decision. He concludes the agency acted arbitrarily, and the court can set aside agency action.

Respondents note Petitioner failed to point to any particular change in Commission regulations that was not carried out in accordance with the notice and comment provisions of the Administrative Procedures Act. Furthermore, Petitioner is incorrect that there are no longer Regional Commissioners to review recommendations made by hearing officers. Review by the Regional Commissioner is governed by 28 C.F.R. § 2.24.

Upon this Court's review of the Amended Petition, Petitioner does not set forth a cognizable claim that the Commission violated the notice and comment requirement of Section 4 of the APA, 5 U.S.C. § 553. See <u>Perez v. Mortgage Bankers Ass'n</u>, 135 S.Ct. 1199, 1203-04 (3d Cir. 2015)(describing

three-step notice and comment rulemaking procedure). Therefore, the Court will deny Ground Nine of the habeas petition.

### L.   Ground Ten

Petitioner contends the Parole Commission violated the Eighth Amendment by giving him a parole date that exceeds his sentence.

While it is true that the Eighth Amendment prohibits imposition of punishment that is grossly disproportionate to the severity of the crime, see Gregg v. Georgia, 428 U.S. 153 (1976), a parole revocation occurs after the end of a criminal prosecution and does not involve the imposition of punishment in the same manner as a criminal prosecution. See Morrissey, 408 U.S. at 481 ("parole arises after the end of the criminal prosecution, including imposition of sentence.") Therefore, the Eighth Amendment is inapplicable here, and the Court will deny Ground Ten of the petition.

### M.   Ground Eleven

Petitioner claims he should receive a sentencing reduction based on changes in the Sentencing Guidelines. He recognizes that he was convicted prior to the new sentencing guidelines, prohibiting him from filing a motion under 18 U.S.C. § 3582. Nonetheless, Petitioner argues that under the new guidelines, his age would reduce his sentence.

The U.S. Sentencing Guidelines were promulgated on November 1, 1987, and implemented nationwide in January 1989. Barbara S. Meierhoefer, The Role of Offense and Offender Characteristics in Federal Sentencing, 66 S. Cal. L. Rev. 367, 368 (Nov. 1992). Petitioner's federal sentence was imposed in 1979, well before the sentencing guidelines were implemented. See U.S. v. Jones, 350 F. App'x 729, 732 (3d Cir. 2009)(petitioner who was not sentenced under the applicable Guideline range was unaffected by amendment to Guidelines and not entitled to reduction of sentence under 18 U.S.C. § 3582.) Therefore, Petitioner is not entitled to relief on Ground Eleven of the petition.

III. CONCLUSION

In the accompanying Order filed herewith, the Court will deny Petitioner's requests for an evidentiary hearing and appointment of pro bono counsel, and deny the Amended Petition.

DATED: October 31, 2016

s/RENÉE MARIE BUMB
**RENÉE MARIE BUMB**
**United States District Judge**

25